IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 0:12-197-CMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ZAVIER LAVAR WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## Government's Response in Opposition to Defendant's Motion for Compassionate Release

The defendant ZAVIER LAVAR WILLIAMS seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 222. The motion should be denied.

The full body of the substance of his motion is 10 lines, in which he advances four bases: (1) First, "the increase risk posed to be my the COVID-19 pandemic," (2) Second, "changes in federal sentencing law," he believes, provide that he would not be a career offender if he were prosecuted and sentenced today, (3) Third, "Sentencing disparity," and (4) Fourth, "Rehabilitation efforts." *Id*. at 4.

The motion should be denied with prejudice because Williams has failed to show extraordinary and compelling reasons through the bare and entirely unexamined and unsupported claims listed in his motion. He is also mistaken in his claim that he would not be a career offender today. Alternatively, even if Williams had shown what he must, the § 3553(a) factors weigh against release. For the reasons below, the motion should be denied.

### I. BACKGROUND

In February 2012, the ATF, along with three state and local law enforcement agencies, were investigating Zavier Williams and Christy Deese for the distribution of multi-ounce quantities of marijuana, cocaine, and crack cocaine in Chester County, South Carolina. PSR ¶ 16. Across the

course of that investigation, Williams sold drugs to a confidential informant (CI) five times, and during the fifth transaction, Williams was arrested while trying to obtain four firearms in exchange for cocaine, despite Williams being a convicted felon. PSR ¶ 16 (fifth transaction), 36-55 (felon status).

In a series of transactions on February 7, 9, 16, 21, and 23, 2012, Williams sold cocaine to the CI, and at his arrest, agents also seized crack cocaine and marijuana. PSR ¶ 29. Taken together, agents recovered from Williams 227 grams of cocaine, 4.05 grams of crack cocaine, and 13.32 grams of marijuana. *Id*. In the final transaction, Williams arranged to distribute four ounces of cocaine in exchange for $2,200 and four firearms. PSR ¶ 22. The four firearms were (1) an Israel Military Industries, Model Desert Eagle, .50 caliber pistol, (2) a Kahr, Model K40, .40 caliber pistol, (3) a Glock, Model 22, .40 caliber pistol, and (3) a Glock, Model 19, 9 mm pistol. *Id*. An undercover agent (UC) and the CI met Williams inside a hotel room, Williams asked if the UC had the guns, and the group discussed whether the guns were "clean." PSR ¶ 24. Williams then removed a clear plastic bag from his waistband; the bag contained 91 grams of cocaine. *Id*.

ATF arrested Williams during the transaction, and in the car he was using, agents found a Deese with a .32 caliber pistol loaded with seven rounds, as well as 31 grams of cocaine, 4 grams of crack cocaine, and 13 grams of marijuana. PSR ¶ 24. Williams admitted that he left Deese in the car to "watch his back" in case there was a robbery during the deal. PSR ¶ 25. He wanted the weapons so he could re-sell them and he had bought a rifle, shotgun, and revolver from the CI in the past. PSR ¶ 28. It was all connected to a drug distribution operation he had been operating for about two years. *Id*.

On March 6, 2012, a federal grand jury indicted Williams and Deese, charging Williams in four counts related to the illegal possession of firearms, drug distribution, and the possession of firearms in connection with drug trafficking. ECF No. 20. On September 10, 2012, this Court

accepted Williams' guilty plea to two counts: (1) the drug conspiracy count, with the object being to possess with intent to distribute and to distribute a quantity of cocaine, cocaine base and marijuana (Count 1), and (2) to possession of a firearm in connection with drug trafficking (Count 3). ECF No. 75 (plea agreement), 76 (change of plea).

United States Probation prepared a PSR, which correctly concluded that Williams was a career offender pursuant to U.S.S.G. § 4B1.1. PSR ¶ 113. His total offense level was 31 and his criminal history category was VI, yielding a Guidelines range of 262 to 327 months. *Id.* The PSR also listed his prior convictions for Distribution of Crack (PSR ¶ 36); Marijuana Possession (PSR ¶ 37); Shoplifting, Resisting Arrest, and False Information to Police (PSR ¶ 40); Concealed Weapon Possession, Violation of Order of Protection (two convictions), Return to Premises After Warning (two convictions), and Resisting Arrest (PSR ¶ 41); Assault and Battery (PSR ¶ 42); Petty Larceny and Marijuana Possession (PSR ¶ 43); Purse Snatching (PSR ¶ 44); Petty Larceny (PSR ¶ 45); Crack Possession (PSR ¶ 46); Receiving Stolen Goods, $5,000 More (PSR ¶ 47); Accessory After the Fact to Burglary (PSR ¶ 48); Possession of Stolen Goods (PSR ¶ 49); Assault and Battery (PSR ¶ 50); Burglary 2nd Degree (PSR ¶ 51); Assault and Battery of a High and Aggravated Nature (ABHAN) (PSR ¶ 52); Failure to Stop for Blue Light and Public Disorderly Conduct (PSR ¶ 53); Criminal Domestic Violence, in a case involving Williams possessing a firearm and preventing a female victim from leaving while an 8 year old was present (PSR ¶ 54); and Unlawful Possession of Drug Paraphernalia (PSR ¶ 55), among others. All of these were before his federal convictions. This Court sentenced Williams to the bottom end of his advisory guideline range, 262 months with six years of supervision to follow. ECF No. 94.

According to BOP Inmate Locator, Williams is currently serving his sentence at Victorville USP, and his estimated release date is June 29, 2031. *See* BOP Inmate Locator at www.bop.gov/inmateloc/ (Last Accessed May 21, 2025).

Since sentencing, Williams has filed multiple challenges to his conviction or sentence, none of which have had merit. Williams has filed multiple petitions under § 2255, all of which have been denied or dismissed as successive. *See* ECF Nos. 122, 136, 160, 162, 173. Williams also requested a First Step Act Reduction, but that request was without merit. ECF No. 183 (order denying), 205 (order denying motion to reconsider). Williams then asked for his sentence to be reduced based on out of circuit caselaw that had been overruled by the Supreme Court. ECF No. 208 (order denying). He filed an additional motion that was denied in part because it was "very vague and does not reference any specific new law or Guideline amendment." ECF No. 220 (order denying). It appears Williams has again filed a motion with the same deficiencies.

In the motion now pending, Williams seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 222. The substance of his motion is 10 lines, in which he lists four bases: (1) First, "the increase risk posed to be my the COVID-19 pandemic," (2) Second, "changes in federal sentencing law" provide that he would not be a career offender if he were sentenced today, (3) Third, "Sentencing disparity," and (4) Fourth, "Rehabilitation efforts." *Id*. at 4. It's almost as if Williams came across concepts advanced in these motions, but he did not develop or argue how they may apply to him in any way. The first, third, and fourth grounds as written above are as they are in full in the pending motion. Two of the bases are two words long each. Three of the bases are a collective 14 words. For the reasons below, the motion should be denied.

**II. ARGUMENT**

Williams seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which permits a court to reduce a sentence upon a showing of "extraordinary and compelling circumstances." The motion should be denied for the reasons below.

Under 18 U.S.C. § 3582(c)(1)(A)(i), an inmate may seek a reduction in sentence (often referred to as "compassionate release") based on "extraordinary and compelling circumstances."

The Sentencing Commission has adopted a policy statement U.S.S.G. § 1B1.13(b), which describes what constitutes "extraordinary and compelling" reasons that may permit a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Those include medical circumstances, such as when a defendant is suffering from a terminal illness, cognitive impairment, age-related deterioration, or long-term care unavailable in the BOP risk serious deterioration or death. U.S.S.G. § 1B1.13(b)(1)(A), (B), (C). Extreme conditions related to age, family circumstances, or the prisoner being a victim of abuse in BOP are also listed. U.S.S.G. § 1B1.13(b)(2), (3), (4). "Other reasons" that are similar in gravity to the above are also listed. U.S.S.G. § 1B1.13(b)(5). Post-sentence rehabilitation alone is not an extraordinary and compelling reason, but it can be considered as a factor. U.S.S.G. § 1B1.13(d).

The Fourth Circuit in *United States v. McCoy*, 981 F.3d 271, 281–83 (4th Cir. 2020) held that district courts can consider any reason they conclude represents extraordinary and compelling circumstances beyond the above. Finally, an "unusually long sentence" as defined below may also be considered:

> **(6) Unusually Long Sentence.**--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6). That provision calls district courts to compare the sentence the inmate is serving and the sentence that would "likely … be imposed" today, calculated using the current version of the Guidelines Manual. *Id*. The directive to consider the sentence that would be imposed today, however, is in some tension with the policy statement's further instruction to focus only on the "change in law" cognizable under subsection (b)(6) and determine whether "such

change would produce a gross disparity." U.S.S.G. § 1B1.13(c). Importantly, the Government preserves and does not waive its position that § 1B1.13(b)(6) is not a valid basis to grant compassionate release because the Sentencing Commission exceeded its congressionally delegated authority in promulgating it. However, for the reasons below, even if it were valid, Williams' argument fails to establish what that policy statement calls for.

Here, the first, third, and fourth grounds cited by Williams are entirely conclusory and are supported by no evidence, argument, or analysis. Taken together, these three grounds span a total of 14 words. As for the first ground, "the increase risk posed to be by the COVID-19 pandemic," ECF No. 222 at 4, Williams has provided no evidence of the kind that some courts found persuasive during the height of the public health emergency four years ago. He has not demonstrated that BOP has failed to offer him a vaccine, or that he presents a medical risk factor that the CDC recognizes as affecting the likelihood of severe outcomes from COVID-19. He has also provided no medical records or input from any medical professional, which may go to substantiate a COVID-related claim.

As for the third ground, he simply wrote, "sentencing disparity." *Id*. He has not identified any similarly situated defendant – that is, one with a similar history and similar conduct – in this case or others who was treated in a way that creates a sentencing disparity. He hasn't made an argument to this end at all, more than listing those two words. To the extent he wishes to reach for the lower sentence of his co-defendant from 13 years ago, he has not shown that her criminal history was similar, that her role was similar in the five distributions, or that her drug weight was similar; in fact, the PSR suggests otherwise. Her sentencing memo also shows a very different story than his. See ECF No. 85. She pled guilty Aiding and Abetting PWID Marijuana, her drug weight was far lower, she was involved in less firearms than Williams, and her Guidelines were

24 to 30 months. *Id*. She also had no criminal history. *Id*. If it is Dreese he is referencing, their cases are not similarly situated.

As for the fourth ground, "Rehabilitation efforts," Williams has also not made an argument. He did, however, provide what appears to be three pages of transcripts showing that he has taken numerous classes while in BOP. While that record is commendable, it is undermined by his disciplinary history, which includes six prohibited sex acts, possession of a dangerous weapon, two drug/alcohol possessions, two security infractions, and insolence with BOP staff. *See* Exhibit A – Williams Disciplinary History.

As for the final ground, Williams writes that "changes in federal sentencing law" provide that he would not be a career offender if he were sentenced today. He is mistaken about that.

First, to the extent Williams is claiming some Guidelines error was committed in imposing his sentence, he cannot use a compassionate release motion to attack on the validity of his sentence, including the calculation of his Guidelines range. That claim must come through a § 2255 petition. "Because § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements." *United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022).[1] It also does not matter whether Williams captioned § 2255 request as a compassionate

---

[1] Williams' career offender claim would also likely fail under § 2255. Even if he was right, the Fourth Circuit has held that a sentence "which was based on a subsequently-nullified career offender designation was not a fundamental defect, as required to raise a challenge on a motion to vacate." *Foote v. United States*, 784 F.3d 931 (4th Cir. 2015). As the Fourth Circuit reasoned, "[n]either Appellant's federal offense of conviction nor his state convictions qualifying him as a career offender have been vacated, he was sentenced under an advisory sentencing scheme, and we are hesitant to undermine the judicial system's interest in finality to classify a Sentencing Guidelines error as a fundamental defect." *Id*. at 932.

7

release motion.[2]  If a claimed sentencing error is at the core of this basis, the motion should be denied because that claim must be brought as a § 2255 petition.

Second, to the extent Williams is claiming he is subejct to an "unusually long sentence" within the meaning of U.S.S.G. § 1B1.13(b)(6), because he would not be a career offender today, he is mistaken.  He would be a career offender today.  A career offender is someone who commits a felony crime of violence or a controlled substance offense after two prior felony convictions for those crimes.  U.S.S.C § 4B1.1.  The person also has to be 18 years old at the time of the instant offense of conviction.  *Id*.  The relevant career offender predicate definitions are:

> **(a) Crime of Violence.**--The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
>
> > **(1)** has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > **(2)** is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).
>
> **(b) Controlled Substance Offense.**--The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > **(1)** prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a

---

[2] In, *Melton v. United States*, 359 F.3d 855 (7th Cir. 2004), the Seventh Circuit explained that prisoners cannot avoid § 2255 limitations by inventive captioning.  In *Farkas v. Butner*, 972 F.3d 548 (4th Cir. 2020), the Fourth Circuit found that creative captioning of motions that are within the scope of § 2255 are § 2255 motions. In doing so, the Fourth Circuit cited *Melton*, ''[a]ny motion filed in the district court that imposed the sentence, and substantively within the scope of § 2255, is a motion under § 2255, no matter what title the prisoner plasters on the cover.'' *Id*. "Call it a motion for a new trial, arrest of judgment, mandamus, prohibition, coram nobis, coram vobis, audita querela, certiorari, capias, habeas corpus, ejectment, quare impedit, bill of review, writ of error, or an application for a Get–Out–of–Jail Card; the name makes no difference. It is substance that controls. *See Thurman v. Gramley*, 97 F.3d 185, 186–87 (7th Cir. 1996)."

controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense; or

**(2)** is an offense described in 46 U.S.C. § 70503(a) or § 70506(b).

U.S.S.G. § 4B1.2.

Here, the instant offense of conviction was a controlled substance offense. "A violation of 18 U.S.C. § 924(c) … is a 'crime of violence' or a 'controlled substance offense' if the offense of conviction established that the underlying offense was a 'crime of violence' or a 'controlled substance offense'." U.S.S.G. § 4B1.2 Application Note 1; see also *United States v. Haygood*, 2025 WL 907283, at *3 (D.S.C., 2025) (Judge Anderson concluding for that reason that a "§ 924(c) charge is a career offender triggering offense" in denying compassionate release where an inmate alleged he would not be a career offender if sentenced again today). The indictment identifies the underlying offense as "a drug trafficking crime which is prosecutable in a court of the United States," ECF No. 20 at 3, and the PSR confirms the same in its recitation of the charging document and facts, PSR at 4-10. Just as it was when he was sentenced, his § 924(c) conviction is a "career offender triggering offense."

Williams was over 18 when he committed the instant offense (he was 33 years old, PSR at 2), and he has two prior convictions that remain valid career offender predicates. At his sentencing, his three career offender predicates were Distribution of Crack (PSR ¶ 36), Purse Snatching (PSR ¶ 44), and S.C. common law ABHAN, a 2004 conviction (PSR ¶ 52). Common law ABHAN would no longer serve as a predicate today. Williams was sentenced on December 16, 2012. On November 26, 2013, the Fourth Circuit held that S.C. common law ABHAN is not a crime of violence within the meaning of the Guidelines. *United States v. Montes-Flores*, 736 F.3d 357, 369 (4th Cir. 2013).

9

But his other two predicates remain valid today. First, he was convicted of Distribution of Crack in October 1996. PSR ¶ 36. The offense was punishable by more than one year: Williams was sentenced to 6 years under the Youth Offender Act. Williams has not identified any change in caselaw that would provide that Distribution of Crack would not serve as a valid predicate today. *United States v. Trappier*, 2023 WL 7222850, at *6 (D.S.C., 2023) (As Judge Wooten concluded, "Trappier's 1996 South Carolina conviction for PWID cocaine … remain[s] [a] "controlled substance offenses" under recent Fourth Circuit caselaw and thus remains [an] applicable predicate[] for career offender status if Trappier were to be sentenced today."); *see also United States v. Davis*, 72 F.4th 605, 610 (4th Cir. 2023) (as relevant, holding that distribution offenses under South Carolina law are not categorically disqualified from being treated as "controlled substance offenses" under career offender provisions). Williams has also shown no deficiency in the *Shepard* documents or any other reason his prior drug distribution conviction would not serve as a valid predicate today. Distribution of Crack remains a valid career offender predicate today.

Second, he was convicted of Purse Snatching in 2000. PSR ¶ 44. This Court has already correctly addressed this question in a prior order in this case:

> Defendant seeks to challenge his designation as a career offender under U.S.S.G. § 4B1.1, posing the query "is purse snatching (now) considered a crime of violence[ ] after the 'Simmons' opinion, alongside Alleyne decision [sic], with the sprinkling of 'Whiteside' ... [?]" Resp. to Gov't Opp. at 2, ECF No. 132.
>
> The response to Defendant's query is yes.
>
> South Carolina Code § 16–13–150 provides that "[i]t is unlawful for a person to snatch suddenly and carry away from another a purse or other thing of value with intent to deprive the owner or person lawfully in possession of the article in circumstances not constituting grand larceny or robbery." The cases cited by Defendant are not relevant to Defendant's prior conviction. As noted by the Fourth Circuit, "[t]he act of snatching a purse (or any other property) from the victim's person may not inflict severe pain or injury, but it may do so, and in any event it is certainly aggressive." *United States v. Jarmon,* 596 F.3d 228, 232 (4th Cir. 2010).

ECF No. 133 at 4. The offense was punishable by more than one year: Williams was sentenced to 3 years suspended. *Id.* That statute provides a penalty of up to three years in prison if a person is "to snatch suddenly and carry away from another a purse or other thing of value with intent to deprive the owner or person lawfully in possession of the article in circumstances not constituting grand larceny or robbery." S.C. Code Ann. 16-13-150. It also requires the use of force against another person or their property. A "crime of violence" must have as an element the use, attempted use, or threatened use of physical force against the person or property of another. "Physical force" means force capable of causing physical pain or injury to another person. *Johnson v. United States*, 559 U.S. 133, 140 (2010) (cleaned up). And "[f]orce is capable of causing physical injury within the meaning of *Johnson* when it is sufficient to overcome a victim's resistance." *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019) (cleaned up). Thus, "crime of violence" has three essential components: (1) That one uses, threatens, or attempts to use force; (2) That is physical; and (3) That is against another person or his property. Purse Snatching has all three. To "suddenly snatch" a purse or valuable property from another person necessary requires the use of force[3], the force must be physical, and the statute is limited to property in another's possession. Just as this Court has concluded before, Purse Snatching remains a valid career offender predicate.[4]

---

[3] The plain, ordinary meaning of "snatch" is "to take or grasp abruptly or hastily," "to seize or take suddenly without permission, ceremony, or right," or "to attempt to seize something suddenly." Merriam Webster Online Dictionary at https://www.merriam-webster.com/dictionary/snatch (Last Accessed May 21, 2025).

[4] If Williams were not a career offender today, his Guidelines would likely be 101 to 111 months. It appears he would be responsible for 59.875 kilograms converted drug weight per U.S.S.G. § 2D1.1(D), which would yield a base offense level of 18. With three levels removed for acceptance, a total offense level of 15, and a criminal history category of VI, the drug conspiracy Guidelines would likely be 41 to 51 months. With 60 months consecutive, the likely total Guidelines would be 101 to 111 months. However, Williams remains a career offender today.

Alternatively, even if Williams had demonstrated extraordinary and compelling reasons, the Court should deny compassionate release in light of the § 3553(a) factors. As for the defendant's history and characteristics, the PSR shows what a public danger Williams has represented when on release. His prior convictions include violations of protective orders, domestic violence, assaults, batteries, assaults and batteries, crimes of dishonesty, property crime and theft, resisting arrest and failure to stop, and drug possessions and distribution. PSR ¶ 36-55. For several of those categories, Williams has numerous such convictions. That record shows a lack of respect for the law, a need for rehabilitation, a need to protection the public, a need to deter, and a need to punish.

As for the nature and circumstances of the offense, federal and local law enforcement targeted Williams because he distributed drugs in significant quantities, which he apparently did while armed. At the last transaction, he sought to exchange drugs for $2,200 and four firearms, and be brought a loaded firearm and a lookout to the transaction. All of that conduct, particularly while a felon and prohibited from possessing nay of the firearms, represents a substantial danger to those who were around Williams and a lack of respect for the law.

Williams' behavior in prison also shows continued rehabilitation is needed. *See* Exhibit A. The § 3553(a) factors do not support release.

### III. CONCLUSION

Because Williams has failed to show extraordinary and compelling circumstances, the motion should be denied. Even if he had shown what he must, the § 3553(a) factors weigh against release. For these reasons, the motion should be denied.

*< signature block to follow >*

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

BY: */s/Elliott B. Daniels*
Elliott B. Daniels (Fed. No. 11931)
Assistant United States Attorney
United States Attorney's Office
1441 Main Street, Suite 500
Columbia, SC 29201
Telephone (803) 929-3000
Fax: (803) 254-2943
Elliott.Daniels@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No.: 0:12-197-CMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ZAVIER LAVAR WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

As attorney of record, on **May 22, 2025** or the business day immediately thereafter I caused to be served one true and correct copy of the attached **Government's Response in Opposition to Defendant's Motion for Compassionate Release** via the court's e-noticing system, but if that means failed, then by regular mail, on the following person(s):

Zavier Lavar Williams #23757-171
USP VICTORVILLE
U.S. PENITENTIARY
P.O. Box 3900
Adelanto, CA 92301

BY: s/Elliott B. Daniels
Elliott B. Daniels (Fed. No. 11931)
Assistant United States Attorney
United States Attorney's Office
1441 Main Street, Suite 500
Columbia, SC 29201
Telephone (803) 929-3000
Fax: (803) 254-2943
Elliott.Daniels@usdoj.gov